UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SELIM UMIT KUCUK,<br><br>                 Plaintiff,<br>    v.<br><br>CENTRAL WASHINGTON UNIVERSITY,<br><br>                 Defendant. | CASE NO. C17-1262JLR<br><br>ORDER ON MOTION TO DISMISS |

## I.    INTRODUCTION

Before the court is Defendant Central Washington University's ("CWU") motion to dismiss *pro se* Plaintiff Selim Umut Kucuk's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (MTD (Dkt. # 7).) The court has considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully

//

//

advised,[1] the court GRANTS Defendants' motion (Dkt. # 7) but also allows Mr. Kucuk leave to file an amended complaint that cures the deficiencies identified herein within 21 days of the entry of this order.

## II. BACKGROUND

Mr. Kucuk, a Turkish-American, is a former CWU employee who worked as a full-time faculty member from 2009 to 2011.[2] (Compl. (Dkt. # 3) at 2-3.) While employed in 2011, Mr. Kucuk applied for a "'Tenure-Track Assistant Professor of Marketing' faculty position[,]" but was denied. (*Id.* at 4.) Both the Dean and Department Chair of CWU's College of Business ("CWU-CB") told Mr. Kucuk they did not consider him for the position because his PhD is not from a university accredited by the Association to Advance Collegiate Schools of Business ("AACSB"). (*Id.*) Mr. Kucuk finished his PhD in Turkey at a time when no universities in the country had AACSB accreditation. (*See id.* at 5-6.) Later in 2011, CWU did not renew Mr. Kucuk's full-time lecturer contract. (*Id.* at 7.) He has not worked for CWU since that time.

In 2011, Mr. Kucuk filed a discrimination charge against CWU with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) In his charge, he argued that he was discriminated against based on his national origin. (*See id.* at 7-8.) The EEOC

//

---

[1] No party requests oral argument, and the court concludes that oral argument would not be helpful to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Because the court is ruling on a motion to dismiss, it accepts Mr. Kucuk's well-pleaded allegations of fact as true. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). In addition, the court liberally construes Mr. Kucuk's complaint because he is a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

closed Mr. Kucuk's case in 2013 for lack of cause (*id.* at 8), and Mr. Kucuk did not file a discrimination suit after receiving his notice of dismissal and right to sue (*see generally id.*).

Mr. Kucuk applied for a similar "Tenure-Track Assistant/Associate Professor of Marketing" position in 2013 and 2015 at two other CWU campuses; CWU declined to hire him both times. (*Id.* at 8-9.) CWU again cited the accreditation requirement as its reason for not hiring Mr. Kucuk. (*Id.* at 9.) In 2015, Mr. Kucuk filed another discrimination charge with the EEOC. (*Id.*) His 2015 charge led to the current action, which he timely brought on August 21, 2017, after the EEOC closed his second case. *See* 42 U.S.C. § 2000e-5(f)(1); (Compl. at 9, Ex. 10 ("Not. of Suit Rights") at 2).

In his complaint, Mr. Kucuk claims that CWU used the accreditation requirement for the tenure-track position to discriminate against him based on his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (*See* Compl. at 2, 7-9.) He also claims that CWU violated Title VII by subjecting him to offensive remarks from faculty members about his national origin[3] (*id.* at 3) and by

//

---

[3] Mr. Kucuk alleges that these remarks took place when he was a CWU employee between 2009 and 2011. (*See* Compl. at 3.) Mr. Kucuk included this allegation in his 2015 discrimination charge with the EEOC. (*See id.* at 9, Ex. 8 at 2.) It is unclear whether he included the allegation in his 2011 charge because that charge is not attached to his complaint. (*See generally id.*) If he included these allegations in his 2011 charge, he had 90 days after receiving notice of his right to sue to bring a discrimination claim regarding these remarks, which he did not do. 42 U.S.C. § 2000e-5(f)(1); (*see generally* Compl.). If Mr. Kucuk did not include these allegations in his 2011 charge, he would have had to file a separate charge with the EEOC within 180 days of the remarks taking place. *See* 42 U.S.C. § 2000e-5(e)(1). Mr. Kucuk does not allege that he brought a separate charge regarding these remarks. (*See generally* Compl.) As a result, the court does not consider these allegations in its evaluation of CWU's motion.

retaliating against him after he "complained about this discriminatory practice to the EEOC" (*id.* at 8). Mr. Kucuk seeks injunctive and monetary relief. (*Id.* at 9.) Specifically, he asks (1) to be compensated for his financial and emotional losses, (2) to be granted the tenure-track position, and (3) for the court to order CWU to change its hiring practices. (*Id.* at 9.)

On October 4, 2017, CWU moved to dismiss Mr. Kucuk's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (MTD at 1.) CWU construes Mr. Kucuk's complaint as alleging the following Title VII claims: (1) discriminatory treatment, (2) disparate impact, and (3) retaliation. (*Id.* at 3.) However, CWU argues that Mr. Kucuk does not allege sufficient facts to show he is entitled to relief under any of these claims. (*See id.* at 3-6.) Mr. Kucuk opposes CWU's motion. (*See generally* Resp. (Dkt. # 8).)

Because Mr. Kucuk timely filed suit regarding his 2015 discrimination charge but not his 2011 charge (*see* Not. of Suit Rights at 2; *see generally* Compl.), the court considers only the allegations related to his 2015 charge. *See supra* n.3. The court now evaluates CWU's motion.

### III. ANALYSIS

**A. Legal Standard**

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint must have sufficient factual allegations to "state a

claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), dismissal can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Wyler Summit*, 135 F.3d at 661. The court also liberally construes a complaint filed by a *pro se* litigant like Mr. Kucuk. *See Erickson*, 551 U.S. at 94 ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). However, "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986), and the court cannot supply essential facts that the *pro se* plaintiff has failed to plead, *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

**B. CWU's Motion to Dismiss**

Liberally construed, Mr. Kucuk's complaint alleges that: (1) CWU violated Title VII's disparate treatment prohibition by denying him the tenure-track position because

his PhD is not from an AACSB-accredited university, (2) CWU violated Title VII's disparate impact prohibition by requiring that applicants for the tenure-track position have a PhD from an AACSB-accredited university, and (3) CWU violated Title VII's retaliation prohibition by denying him the tenure-track position after he filed a discrimination charge with the EEOC. (*See* Compl. at 5, 7-9.) CWU argues that Mr. Kucuk's complaint should be dismissed because he alleges insufficient facts to support any plausible claim for relief. (*See* MTD at 4-6.) The court agrees with CWU and now addresses each claim in turn.

1. <u>Disparate Treatment Claim</u>

CWU contends that Mr. Kucuk fails to state a claim for disparate treatment because he "does not allege and cannot show that he was qualified for the position sought and denied," and failure to produce such evidence "'will typically prevent a plaintiff from satisfying either the second or fourth prong of the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] test.'" (MTD at 4 (quoting *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002)).) Furthermore, CWU argues that Mr. Kucuk fails to provide any facts showing that "CWU's intent or motive in denying him this particular position was discriminatory in any way." (*Id.*)

Mr. Kucuk agrees that he lacks the qualification that his PhD is from an AACSB-accredited school. (*See* Resp. at 3.) However, he contends that he "didn't have a choice to go to [an] AACSB[-]accredited school" in Turkey; he was found to be an "academically qualified and excellent scholar" by CWU, the AACSB, and other

//

academic institutions; and thus, it is discriminatory for CWU not to hire him or anyone else of international descent when the AACSB finds him to be qualified. (*See id.* at 3, 9.)

To establish a prima facie case of disparate treatment for a failure-to-hire claim, Mr. Kucuk must allege that (1) he belongs to a protected class; (2) he applied for a job for which he was qualified and CWU was seeking applicants; (3) he was rejected for the job; and (4) the job remained open after he was rejected and CWU continued to seek applicants with the same qualifications as Mr. Kucuk. *See McDonnell Douglas*, 411 U.S. at 802. Mr. Kucuk fails to state a disparate treatment claim because he does not allege that he met the qualifications for the tenure-track position, the second *McDonnell Douglas* element. (*See generally* Compl.) In fact, he agrees with CWU that he lacks the requirement that his PhD be from an AACSB-accredited university. (*See id.* at 5-6; Resp. at 3.) He argues instead that CWU used the accreditation requirement "wrongfully to lower academic qualifications of candidates with international backgrounds" and hired "a less qualified candidate" for the position. (Compl. at 9.) However, he does not allege that the hired candidate also lacked the accreditation requirement (*see generally id.*), nor does he allege facts to support his conclusion that CWU used the accreditation requirement "wrongfully" (*id.* at 9). Because Mr. Kucuk does not meet a requirement for the tenure-track position, he does not satisfy the second element of the *McDonnell Douglas* test. Accordingly, his disparate treatment claim fails, and the court dismisses the claim.

//

//

### 2. Disparate Impact Claim

CWU contends that Mr. Kucuk fails to state a disparate impact claim because he does not provide any "evidence of a statistical disparity or any other equivalent facts showing the accreditation requirement results in a disparate impact or otherwise allows an inference of discrimination." (MTD at 5.) Specifically, CWU argues that "[Mr.] Kucuk alleges no facts showing that CWU's policy has any impact on other Turk[ish] nationals" and "provides no information about any other applicants with international backgrounds from which to infer any discrimination in CWU's hiring practices." (*Id.* (emphasis omitted).)

In response, Mr. Kucuk argues that because Washington has a small higher education market and not enough in-state tenure-track positions become vacant, there is not enough data available to "reach some statistical generalizations" about the in-state hiring of tenure-track marketing professors. (*See* Resp. at 4.) He therefore concludes that a "sample size and/or sample bias problem exists" in his case against CWU. (*Id.*) Instead, he suggests that the court "look at the validity of events"—for example, a lack of tenure-track faculty of international descent at CWU-CB's main campus. (*Id.* at 4-5.) He further states that all of the marketing faculty there are of American descent, and that those with an international background are mostly hired at CWU's branch campuses so that they cannot be actively involved in the administration's decision-making processes. (*See id.* at 5.)

"To establish a prima facie case of disparate impact under Title VII, the plaintiff[] must: (1) show a significant disparate impact on a protected class or group; (2) identify

the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002). Moreover, "[s]tatistical evidence is used to demonstrate how a particular employment practice causes a protected minority group to be under represented in a specific area of employment." *Paige v. California*, 291 F.3d 1141, 1145 (9th Cir. 2002). "The statistical analysis must show a disparity that is 'sufficiently substantial' as to 'raise such an inference of causation.'" *Id.* (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 995 (1988)).

Mr. Kucuk fails to state a disparate impact claim because he does not allege any employment statistics suggesting that CWU's accreditation requirement causes a disparate impact on either Turkish applicants or applicants from other countries. (*See generally* Compl.) Although Mr. Kucuk argues that CWU's use of the accreditation requirement "is discriminatory, unconstitutional, and unacceptable for the applicants who got degrees from different countries where there were no accredited institutions when they [were] studying their degrees" (*id.* at 9), he does not allege facts showing that applicants with international backgrounds are affected by the requirement (*see generally id.*). For example, he does not allege statistics showing a lack of tenure-track marketing faculty of international descent versus American descent employed by CWU.[4] (*See generally id.*)

---

[4] At the end of Mr. Kucuk's response, he attaches a contact list from CWU's website that shows the names of CWU's marketing faculty and the campus where each faculty member
ORDER - 9

1       Rather, Mr. Kucuk states that CWU hires marketing faculty of international

2 descent at its branch campuses, and that faculty of international descent hired at the main

3 campus in Ellensburg, Washington "generally leave after a year or so to [sic] the other

4 branch campuses." (Resp. at 5.) He goes on to state that "[t]o the best of [his]

5 knowledge, there is no person with [an] international background hired as [a] tenure-track

6 Assistant/Associate professor Marketing position in Ellensburg in CWU history." (*Id.*)

7 At most, Mr. Kucuk alleges that CWU hires marketing faculty of international descent

8 only at its branch campuses. (*See* Compl. at 10.) However, the tenure-track position Mr.

9 Kucuk applied for was at a branch campus in Des Moines, Washington (*see id.* at 8), and

10 he does not allege any statistics regarding the number of tenure-track marketing faculty

11 with an international background at the Des Moines campus (*see generally id.*).

12 Accordingly, the court dismisses Mr. Kucuk's disparate impact claim.

      3. <u>Retaliation Claim</u>

14       CWU contends that Mr. Kucuk fails to state a retaliation claim because the only

15 allegation he makes related to the claim is a legal conclusion. (*See* MTD at 6 (citing

16 *Iqbal*, 556 U.S. at 678).) In his complaint, Mr. Kucuk states that after applying for

17 various faculty positions at CWU, he was "retaliated [sic] as [he] complained about this

18 discriminatory practice to the EEOC." (Compl. at 8.) CWU thus concludes that "[t]here

---

works. (*See* Resp. at 20-24.) He notes on the list whether the faculty member is of "American" or "International" descent in order to show that all of the marketing faculty at CWU-CB's main campus are of American descent. (*See* Resp. at 5, 20-24.) However, because this list is not a part of Mr. Kucuk's complaint, the court may not consider it in evaluating CWU's motion. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) (citing *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984)).

are no facts here to infer that [Mr.] Kucuk was retaliated against due to his EEOC complaint." (MTD at 6.)

In response, Mr. Kucuk states he applied for and was denied part-time marketing faculty positions at CWU in 2012 and 2013, in addition to the tenure-track positions in 2013 and 2015. (*See* Resp. at 6-7.) He also identifies Peter Boyle as the search committee chair for the 2013 tenure-track position and Mark Pritchard as the search committee chair for the 2015 tenure-track position. (*See id.*) He concludes that this pattern of being denied faculty positions after complaining to the EEOC "indicates a robust retaliation effort directed by CWU-CB, specifically Department of Marketing faculty members."[5] (*Id.* at 7.)

"The elements of a prima facie retaliation claim are (1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)). Further, "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). "[T]he plaintiff must show that the particular decision maker who authorized or

//

---

[5] As noted previously, the court does not consider Mr. Kucuk's allegations regarding the 2012 and 2013 positions he applied for in its evaluation of CWU's motion. *See supra* n.3. Mr. Kucuk does not allege that he filed a charge against CWU with the EEOC after being denied those positions (*see generally* Compl.), and the limitations period for bringing a charge has since passed, *see* 42 U.S.C. § 2000e-5(e)(1).

committed the adverse employment action was aware that the plaintiff had engaged in the protected activity." *Cooper v. Cate*, No. 1:10-cv-899 AWI DLB, 2011 WL 5554321, at *10 (N.D. Cal. Oct. 23, 2013) (citing *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003); *Cohen*, 686 F.2d at 796; *Gunther v. Cty. Of Wash.*, 623 F.2d 1303, 1316 (9th Cir. 1979)).

Mr. Kucuk fails to state a retaliation claim because he does not allege that the decision maker who declined to hire him in 2015 was aware that he engaged in a protected activity. (*See generally* Compl.) Although Mr. Kucuk identifies Mr. Pritchard as the search committee chair for the position in his response (Resp. at 7), he does not identify him as the chair in his complaint or allege that Mr. Pritchard knew of the discrimination charge filed against CWU with the EEOC (*see generally* Compl.). Thus, Mr. Kucuk fails to allege sufficient facts to establish the third element of a prima facie retaliation claim. *See Davis*, 520 F.3d at 1093-94; *Cohen*, 686 F.2d at 793. Accordingly, the court dismisses the claim.

**C. Leave to Amend**

When a court grants a motion to dismiss, the court should ordinarily dismiss the complaint with leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The Ninth Circuit has further instructed that a district court should not dismiss a *pro se* complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203 (9th Cir. 1988)); *see also Eminence Capital*,

316 F.3d at 1052 (noting that dismissal with prejudice is appropriate only if it would be "clear on de novo review that the complaint could not be saved by amendment"). In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith, or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party by virtue of allowance of the amendment; and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the court finds that dismissal with leave to amend is appropriate for Mr. Kucuk's disparate impact and retaliation claims, but not for his disparate treatment claim. No additional allegation could overcome the fact that Mr. Kucuk did not meet the qualifications for the 2015 tenure-track position—a requirement for establishing a prima facie case of disparate treatment. *See McDonnell Douglas*, 411 U.S. at 802; (Compl. at 5-6; Resp. at 3). Thus, any amendment to Mr. Kucuk's disparate treatment claim would be futile. Accordingly, the court dismisses Mr. Kucuk's disparate treatment claim with prejudice and without leave to amend.

However, the court cannot say at this time that it is "absolutely clear" that Mr. Kucuk cannot cure the identified deficiencies in his disparate impact and retaliation claims. If Mr. Kucuk chooses to amend his complaint, the court instructs him to consider the deficiencies in his original complaint that the court has identified above. Failure to cure those deficiencies may be interpreted as an indication that further amendment would be futile. In addition, the court cautions Mr. Kucuk that an amended complaint acts as a complete substitute that "supersedes the original" complaint. *See Ferdik v. Bonzelet*, 963

F.2d 1258, 1262-63 (9th Cir. 1992). If Mr. Kucuk chooses to file an amended complaint, he must do so within 21 days of the date of this order. If Mr. Kucuk does not timely file an amended complaint, the court will dismiss this action with prejudice. If Mr. Kucuk timely files an amended complaint, but fails to cure the deficiencies in his disparate impact and retaliation claims that are identified in this order, the court will dismiss those claims with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS CWU's motion to dismiss (Dkt. # 7) but also allows Mr. Kucuk leave to amend his disparate impact and retaliation claims within 21 days of the entry of this order. The court dismisses Mr. Kucuk's disparate treatment claim with prejudice and without leave to amend.

Dated this 30th day of November, 2017.

JAMES L. ROBART
United States District Judge